PEAY AS ADM'R VS. RINGO.

To maintain assumpsit for money had and received, it must appear that the defendant received money due to the plaintiff, or something which he had received as, or instead of money, or which he had converted into money before suit.

OF THE STATE OF ARKANSAS. 69

Term, 1860.]                    Peay as adm'r vs. Ringo.

Where claims are placed in the hands of an attorney for collection, he is not respon-
sible on the money counts for failure to use due diligence in their collection: nor
does proof that the debtor was solvent raise a legal presumption that the attorney
collected the money so as to make it incumbent on him to show that he had not
collected it.

*Error to Pulaski Circuit Court.*

Hon. John J. Clendenin, Circuit Judge.

Garland, for the plaintiff.

Due diligence constitutes the measure of an attorney's engage-
ments.   6 *Eng.* 212; 13 *Ark.* 193.

Where a note is received for a particular purpose as so much
money, it will be considered as money, and if lost, or mis-
applied, or not applied, an action for money had and received
will lie.   16 *Ark.* 237; *Com. on Con.* 324; 7 *Cowen* 661; 13 *East*
20; 2 *Wash. C. C. R.* 172; 4 *Ib.* 253; 4 *Hill* 442.

Peay need not have done more than prove receipt and
Notrebe's solvency.   2 *Phil. Ev. part 1st. note* 387, *page* 200.

Hempstead, for the defendant.

In an action for money had and received there must be proof
of the actual receipt of money, or its equivalent, before the
action can be maintained.   *Ralston vs. Bell,* 2 *Dall,* 240.   The
action lies in general only where money has been received by
the defendant, or something regarded as money.   *Beardsly vs.
Root,* 11 *Johns.* 464; *Luckett vs. Bohannon,* 3 *Bibb* 378; *Madison
vs. Wallace,* 7 *J. J. Marsh.* 100; *Johnson vs. Hoggin,* 6 *Ib.* 581;
*Clark vs. Pinney,* 6 *Cowen* 297; 6 *Eng.* 270.

It was not sufficient to show that Notrebe was solvent and
able to pay his note, and that it might have been collected by
the use of due diligence.   *Fox vs. Fisk,* 6 *How. Miss.* 328; *Kuhn
vs. Hunt,* 2 *Brevard* 164; *Larry vs. Hunt,* 12 *Geo.* 422.

Mr. Justice Compton delivered the opinion of the Court.

The plaintiff in error brought assumpsit against Ringo as
surviving partner of Ringo & Trapnall—the declaration con-

taining the money counts only. To reverse the judgment of the court below—which was for the defendant—the plaintiff brings the case before this court on writ of error.

At the trial the plaintiff read in evidence a receipt in the words and figures following:

"We have received of James Lawson, Frederick Notrebe's " note, due twelve months after 1st day of April, 1848, for one " thousand dollars, which is to be appropriated towards the " payment of two judgments in Pulaski Circuit Court, one in " the name of William Russell, and another in favor of George " W. Johnson, against James Lawson, as sheriff of Pulaski " county, and which we promise to account for in that way. " The judgment of Russell to be first paid in full, and the resi- " due on the judgment in favor of Johnson. February 2d, 1848.

RINGO & TRAPNALL."

It was then proven that Notrebe was solvent; that by due diligence the above amount could have been made out of him at any time; that the first judgment above mentioned was rendered on the 10th of December 1846, for $645 19, and the second on the 4th December, 1846, for $543 11; that no executions appeared to have been issued on the judgments; nor did satisfaction thereof, in whole or in part, appear to have been entered. That Ringo & Trapnall were the attorneys for the plaintiffs in obtaining the judgments, and that Lawson died in January, 1855.

The plaintiff requested the court to instruct the jury as follows: 1st. "That if the jury believe from the evidence, that the sum of money mentioned in the receipt of Ringo & Trapnall, could have been made by the exercise of due diligence, the defendant is responsible, and if he fails to show that he has appropriated the same to the payment of the judgments, also mentioned in said receipt, they must find for the plaintiff; and 2d: "That the solvency of Notrebe being established, it is a fact from which the jury may infer the collection of the money, and it is incumbent on the defendant to prove that it was not collected."

The court refused so to instruct the jury; but charged them, at the request of the defendant: "That unless it appeared from the evidence that the note mentiond in the receipt, was actually collected, and was not appropriated to the payment of the judgments, they should find for the defendant."

That the court properly refused to give the instructions moved by the plaintiff we think there can be no doubt. The first instruction was foreign to the issue made by the pleadings. If, as is insisted, the money could have been made out of Notrebe by the use of due diligence, and Ringo & Trapnall from negligence failed to make it, the plaintiff should have declared specially. He was not entitled to recover on the common count for money had and received. As to the second instruction, it may be remarked that, though Notrebe was shown to be solvent, still, that fact did not raise the legal presumption that Ringo and Trapnall had received the money on his note so as to shift the *onus probandi*, and make it incumbent on them to show they had not received it. Conceding the solvency of Notrebe to have been a circumstance in evidence, tending to show that the money had been received, it was entitled to no such weight as that given to it by the latter clause of the second instruction.

The rule deducible from the adjudged cases, is, that to maintain assumpsit for money had and received, it must appear that the defendant had received money due to the plaintiff or something which he had received as money and instead of it, or which he had actually or presumptively converted into money before suit brought. *Hatten vs. Robinson*, 4 *Blackf.* 479; *Beardsley vs. Root*, 11 *John.* 464; *Witherup vs. Hill*, 9 *Serg. & Rawle* 11.

It does not appear from the face of the receipt that Ringo & Trapnall received Notrebe's note as money. They were the attorneys who had recovered for their clients the judgments mentioned in the receipts, and upon a fair construction of that instrument, they received the note for collection with the undertaking, on their part, to appropriate the proceeds of it to the payment of those judgments. And, as has been seen, the sol-

vency of Notrebe, though a presumption of *fact*, to be weighed by the jury, and taken for its worth, was not a presumption of *law*, that the note had been converted into money. Hence the instruction given at the instance of the defendant was applicable to the state of case made by the evidence, and was strictly the law.

Finding no error in the record, the judgment must be affirmed.